JOE KING, JR., AND JOE KING JR. TRADING AS JOE KING JR. & CO., AND JOE KING COMPANY, A CORPORATION UNDER THE LAWS OF FLORIDA, *Appellants,* v. W. W. BELL AND A. B. BELL, TRADING AND DOING BUSINESS AS W. W. & A. B. BELL, *Appellees.*

1. An answer to a bill in chancery, not signed as required by law, on a motion for that purpose, is properly stricken from the files.

2. An answer to a bill filed on the January rule day, 1906, not properly signed was properly stricken from the files on the 17th day of May, 1906, and after that day the clerk entered a *nunc pro tunc* decree *pro confesso* as of the rule day in January, 1906, without any order from the circuit judge to do so. This was improper; but inasmuch as by an order dated August 4th, 1906, made on a motion to vacate the decree *pro confesso,* which denied the motion to vacate, the action of the clerk in entering the decree *pro confesso* was recognized, no reversible error is shown.

3. Where a motion is made to vacate a decree *pro confesso* entered because no properly signed answer was filed on the rule day, when an answer was due, and said motion was made more than four months after said rule day, and no sufficient excuse shown for the delay in presenting a properly signed answer, the circuit judge commits no error in refusing to open the decree *pro confesso,* or in refusing to permit the answer to be signed and refiled.

4. While it is true that a complainant is not entitled to any relief after a decree *pro confesso,* except such as is fairly embraced in the allegations and prayers of his bill, yet when a bill is for a general accounting, and prays for a general investigation of all the transactions between the parties, every item fairly embraced in those transactions is properly considered as being within the scope of the bill, notwithstanding such items may not have been specifically mentioned in the bill.

This case was decided by the court *En Banc.*

Appeal from the Circuit Court for Orange County.

The facts in the case are stated in the opinion of the court.

*Gibbons & Maxwell,* for appellants;

*Jones & Jones* for appellees.

HOCKER, J.—On October 25th, 1905. the appellees filed a bill in chancery in the circuit court of Orange county against the appellants, the object of which was, among other things, to obtain an accounting between the parties and to redeem certain property upon which appellees had given a mortgage to the appellants to secure the latter in the payment of certain sums of money and certain advances which were to be made, and to obtain a decree for any balance that might be found due the appellees.   Answer under oath was waived.

Process was served upon the defendants on the 27th day of October, 1905, requiring appearance on the 6th day of November, 1905.   The defendant obtained an order from the circuit judge extending the time for pleading until the January rule day, 1906, which was the first day of the month.   On that day the defendants filed what purported to be an answer signed by their solicitors alone, and not by the defendants or either of them.   On the same day the complainants entered a praecipe for a decree *pro confesso* for failure by the defendants to plead or answer as provided by statute and the rules of the court, and on the same day filed a motion to strike the alleged answer, because it was not verified or signed as required by law and the rules of court, and also for a decree *pro confesso,* and for an order for the clerk to enter the same.

On April 5th, 1906, the complainants gave notice of the hearing of this motion on April 12th but for some reason it was not then heard.   On May 7th, 1906, complainant again gave notice of the hearing of this motion

on May 11th, 1906.   On the 13th of May, 1906, the defendants filed an affidavit in the clerk's office made by John S. Maxwell, in the following words:

W. W. & A. B. Bell        ⎫
          vs.             ⎬        "In Chancery.
Joe King Jr.              ⎭

STATE OF FLORIDA,    ⎱ s.s.
COUNTY OF DUVAL.     ⎰

Before me this day came John S. Maxwell, who being sworn, deposes and says that he is one of the counsel for defendants; that he prepared the answer filed in said cause; that at the time the same was due and had to be sent down to Orlando, Joe King, Jr., was not in the city of Jacksonville, Duval county, Florida, and could not be reached by counsel to have him sign said answer.

                              JOHN S. MAXWELL.

Sworn to and subscribed before me this 10th day of May, A. D. 1906.

(Seal)             ALONZO C. NOLAN,

Notary Public State of Florida at Large.   My commission expires the 12th day of March, 1910.

Upon the back of which appears the following endorsement:   'Filed in office May 13, 1906.

                          B. M. ROBINSON, Clerk.' "

On May 17th, 1906, the circuit judge made the following order on this motion:   "This motion is granted and the answer is accordingly stricken from the files. At Chambers, May 17th, 1906.

                          MINOR S. JONES, Judge."

For some reason, not apparent to us, the clerk filed this order as of January 1st, 1906, and also as of the same day entered a decree *pro confesso* against the defendants in which, among other things, he recites that the motion to strike the answer had been granted, showing that the decree *pro confesso* was really entered after

the date of the order of the judge, to-wit, May 17, 1906.

The defendants on July 10th, 1906 sent a notice to complainants' solicitors of their intention to present a motion to the judge on July 14th, 1906, to set aside the decree *pro confesso,* and to sign and refile the answer, which motion was based on eight grounds, in substance, first, that an answer was on file January 1st, 1906; second and third, the clerk had no power to adjudge the paper writing not to be an answer; fourth, the complainants did not disregard the alleged answer, but filed a motion to strike; fifth, the court granted the motion to strike but did not order a decree *pro confesso;* sixth, the decree *pro confesso* is entered *nunc pro tunc,* and was not authorized; seventh, the answer was stricken for a technical defect, and showed a meritorious defense; eighth, defendant King was absent from the city of Jacksonville, Duval county, at the time said answer was due, and had to be sent down to Orlando, and could not be reached by counsel to have him sign the same.

This motion was denied by the judge on August 4th, 1906. It does not appear that any affidavits were filed in support of the motion.

The time for taking testimony was extended on the application of complainants and the master's report of the same with his finding were filed in the clerk's office on December 31st, 1906. A final decree in favor of complainants was signed by the judge on the 26th of February, 1907, and filed and recorded on the 28th of February, 1907. On the 15th of March, 1907, the judge on application of defendants granted a motion extending the time for making a motion to set aside, vacate or open the final decree for twenty days from March 16th, 1907. On the 4th of April, 1907, defendants presented a motion to the circuit judge to vacate the final decree, which was heard and denied on that day. This motion contained nine grounds, in substance, as follows:

1. The bill is not sufficient in its allegations to give jurisdiction for cancelling the mortgage and for an accounting and to support the decree.   2.   The testimony taken by the master is not sworn to.   And the following items allowed by the master are not within the allegations of the bill, *viz:*   3.   The item of $295.21.   4.   The item of $133.97.   5.   The item of $336.19.   6.   The item of $253.00.   7.   The item of $22.79, and 8.   The item of $112.20.   9.   The account was taken by the master on a partial settlement of the transactions between the parties, without summoning the defendants to produce their full account.

There are five asignments of error, in substance, *viz:*

1.   The clerk erred in entering a decree *pro confesso* on January rule day, 1906.

2.   The clerk erred in entering a decree *pro confesso nunc pro tunc.*

3.   The court erred in its order of August 4th, 1906, denying motion to set aside and vacate the decree *pro confesso,* and in not permitting the defendants to sign and refile the answer stricken.

4.   The court erred in making the so-called decree of February 26th, 1907.

5.   The court erred by its order of April 4th, 1907, denying the motion to set aside and vacate the decree rendered on February 26th, 1907.

We will discuss the first three assignments together. It appears that the decree *pro confesso* was entered as a *nunc pro tunc* decree, as of the first of January, 1906, upon some day not named, after May 17th, 1906, when the circuit judge granted the motion to strike the answer and for a decree *pro confesso.* There was no express direction to the clerk to enter such a decree, and its entry was, we think, irregular if not improper.   But by the order dated August 4th, 1906, when this whole matter was brought before the judge by the defendants

on motion to vacate the decree *pro confesso,* the judge denied the motion and virtually endorsed the action of the clerk in entering the decree *pro confesso.* Rushing v. Thompson, 20 Fla. 583. The answer which was filed on January 1st, 1906, was not signed and was properly stricken on May 17th, 1906. Ballard v. Kennedy, 34 Fla. 483, 16 South. Rep. 327. Four months or more had passed since January 1st, and the defendants made no sort of effort to have a properly signed answer filed. Moreover no sufficient excuse was shown for such a delay. On an application to set aside a decree pro confesso the applicant must show both reasonable diligence and a meritorious defense. Myers v. McGahagan, 26 Fla. 303, 8 South. Rep. 447; Taylor v. Brown, 32 Fla. 334, 13 South. Rep. 957. The fact that Joe King, Jr. was not in Jacksonville when the answer was due on January 1st, was certainly no excuse for such delay in having it signed, after a motion was filed to strike it because of this defect. It does not appear even then that a properly signed answer was tendered. We can discover no error in the order striking the answer.

Again, when the defendants' motion to vacate the decree *pro confesso* came on to be heard in July, it does not appear that any sort of reasonable excuse was offered to the judge accounting for the failure to properly present a proper answer, or that even then a properly signed answer was offered. Such laches it seems to us shuts off the defendants from all cause of complaint.

The fourth and fifth assignments will be considered together.

The sufficiency of the allegations of the bill to secure a cancellation of the alleged mortgage and for an accounting was not challenged by demurrer, and we have discovered no such defect in it as would have justified a motion to set aside a final decree based

thereon if within the proper scope of the bill.    It is true however that a complainant is not entitled to any relief upon a decree *pro confesso* not fairly embraced in the allegations and prayers of the bill.    Price v. Boden, 39 Fla. 218, 22 South. Rep. 657; City of Orlando v. Equitable Building & Loan Ass'n, 45 Fla. 507, 33 South. Rep. 986.    The bill, among other things, alleges in substance that the complainants on the 12th of May, 1905, entered into a written agreement with Joe King, Jr. in which the latter agreed to advance $1,000.00 to the former with which to pay labor claims in their mill operations; that they were to ship King all the output of their mill until he had been repaid; that to secure the payment of said money they mortgaged to King all their interest in certain pine and cypress timber, and the output thereof, and also certain chattels, buildings &c. The bill alleges that complainants entered in good faith into said agreement and proceeded fully to comply with its terms, and shipped the entire output of their mill to Joe King, Jr., it being received by the Joe King Jr. Company; that shipments continued until the 2nd of August, 1905, returns made out to complainants, and the amounts determined upon as the value less freight, credited to complainants; that on August 2nd, 1905, a new agreement was made by which W. H. Northup was placed in charge of the mill business, the output still shipped to the defendants, they agreeing to pay $8 per thousand feet for timber free on board the cars at the mill—of which $5 (per thousand) was to be paid to complainants without deduction.    The bill alleges that up to the 2nd of August, 1905, the inspection of shipments, grading, measurements, &c. were carefully made by complainants; that after August 2nd, 1905, the inspection and shipments were all done by Northup as the agent of Joe King Jr. and Joe King Jr. Company. The bill alleges that the inspection made by complain-

ants was correct, that it was rejected by defendants, and without notice to complainants a new inspection, measurements and classification which reduced the quantity, grade and quality was unjustly made by the defendants, showing a large reduction from the true value of the lumber shipped, which was below the market value ; that the agreement contemplated that Joe King Jr. should fix a reasonable value upon the lumber in keeping with the market value, and not a fraudulent scaling down of values; that the difference between March 27th and August 2nd, 1905, amounted to $253.46 according to a statement attached to the bill. The bill alleges that after August 2nd, 1905, Northup's inspection, which was conclusive on defendants, was rejected by them, and the lumber was reinspected in quality and quantity in a manner seriously and unreasonably unjust to complainants and that they are entitled to greater credits than have been allowed them in an amount which can only be determined by the court upon taking an account of said transactions. The bill also alleges that there were also large freight overcharges deducted from the sales amounting to $147.29; that 25.77 usurious interest was charged; that $100.00 was improperly charged for machinery, and that other items of expense not authorized were charged amounting to $39.84. The bill also alleges that defendants have failed and refused to pay the $5 per thousand feet of lumber without deduction since August 2nd, 1905, as stipulated, but have retained the same on the output amounting to many thousand feet. The bill also alleges that by reason of the fraudulent accounting made by defendants and their failure to perform their agreement, and their fraudulent detention of complainant's property, the deductions claimed by defendants in the several shipments of lumber which should have been credited to complainants more than pay the indebtedness due by complainants, and they are entitled

to the cancellation of the same and the agreement made on the 2nd of August, and the possession of their property.

The bill waives an answer under oath, and prays for an accounting, for redemption of their property, that defendants be ordered to pay complainants any amount found to be due them, for delivery of their property free from liens, etc., and that defendants be decreed to pay complainants such actual damages as may be shown to have accrued to complainants by reason of the fraudulent acts of defendants, including solicitors' fees, for process, and for general relief.   The bill is a long one and we have endeavored to give a fair synopsis of its main features.   The appellants contend that the whole object of the bill as determined by its allegata, was to correct an improper scaling down of the lumber in quantity, quality and value, in specific car load lots, and that total shipments of lumber, for which no credit was given complainants is not within the allegata.   It appears from the report of the master that several of the foregoing items are of this character.   It is also contended that the remaining items which are mentioned are not specifically embraced in the allegata.   It is contended that the judge erred in allowing these items in his final decree.   We have read the bill carefully and we think its fair purport may be held to embrace all the transactions between the parties growing out of the agreements mentioned therein, and to pray for a general accounting with respect to the same.   The items referred to are fairly within the compass of the bill. The appellants insist that the bill under the rule laid down in Dorman v. McDonald, 47 Fla. 252. 36 South. Rep. 52, is without equity.   That case decides that a bill to redeem a mortgage on personal property must show some ground of equitable intervention other than mere payment.   In the instant case the bill charges divers

fraudulent acts on the part of the defendants, which is a well recognized ground of equitable intervention. We therefore can find no reversible error as to said matters.

It is also contended that defendants were not examined by the master with respect to the transactions investigated by him. A decree *pro confesso* having been entered and approved by the judge, we do not understand that the defendants can complain of an ex parte examination. The proceeding in such cases is ex parte. Price v. Boden, 39 Fla. 218, 22 South. Rep. 657.

It is suggested that no officer signed the jurat of the witnesses who were sworn and testified before the master. This question is not argued and no authorities are cited. It is therefore not incumbent on us to say more than that the report of the master states the witnesses were sworn.

The decree of the circuit court is affirmed.

TAYLOR, COCKRELL, WHITFIELD, and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., absent on account of sickness in his family.